# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2021-CT-00694-SCT

*HOWARD INDUSTRIES, INC.*

*v.*

*SELINA HAYES*

## <u>ON WRIT OF CERTIORARI</u>

| | |
|---|---|
| DATE OF JUDGMENT: | 05/19/2021 |
| TRIBUNAL FROM WHICH APPEALED: | MISSISSIPPI WORKERS' COMPENSATION COMMISSION |
| ATTORNEYS FOR APPELLANT: | ROBERT P. THOMPSON<br>LAURA WALSH GIVENS |
| ATTORNEYS FOR APPELLEE: | ROGER K. DOOLITTLE<br>FLOYD E. DOOLITTLE |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| DISPOSITION: | ON DIRECT APPEAL: AFFIRMED. ON CROSS-APPEAL: AFFIRMED - 10/19/2023 |
| MOTION FOR REHEARING FILED: | |

## CONSOLIDATED WITH

## NO. 2021-CT-00695-SCT

*HOWARD INDUSTRIES, INC.*

*v.*

*SELINA HAYES*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/19/2021 |
| TRIBUNAL FROM WHICH APPEALED: | MISSISSIPPI WORKERS' COMPENSATION COMMISSION |
| ATTORNEYS FOR APPELLANT: | ROBERT P. THOMPSON<br>LAURA WALSH GIVENS |
| ATTORNEYS FOR APPELLEE: | ROGER K. DOOLITTLE<br>FLOYD E. DOOLITTLE |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |

DISPOSITION:                    ON DIRECT APPEAL: AFFIRMED.  ON
CROSS-APPEAL: AFFIRMED - 10/19/2023

MOTION FOR REHEARING FILED:

**EN BANC.**

**KITCHENS, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     The Workers' Compensation Commission imposed a $1,000 sanction against an employer's attorney for submitting misleading documentation to an Administrative Judge (AJ).[1] The Court of Appeals affirmed the sanction and the Commission's award of permanent disability benefits to the employee.[2] On *certiorari* review, we agree with the Court of Appeals that the sanction should be affirmed.

## STATEMENT OF THE FACTS

¶2.     Longtime Howard Industries employee Selina Hayes filed two workers' compensation claims related to injuries incurred during her work as a coil winder.[3] The coil winder job required lifting twenty to one hundred pounds of coiled wire above shoulder level. In the first injury, Hayes tripped and fell, injuring her head, neck, shoulder, and back. In the second injury, Hayes injured her right shoulder while lifting wire over her head. The second injury

---

[1] The AJ imposed the sanction against the employer, but on review the Commission placed the sanction solely on the individual attorney.

[2] The Court of Appeals' lengthy opinion is thorough and convincing. ***Howard Indus. Inc. v. Hayes***, No. 2021-WC-00694-COA, 2022 WL 6640398 (Miss. Ct. App. Oct. 11, 2022). Our *certiorari* review is limited to addressing the imposition of the sanction.

[3] The first injury occurred in 2007 and the second in 2015. The claims were consolidated below.

required surgery. Hayes returned to work after reaching maximum medical improvement (MMI). However, due to medical restrictions on her ability to lift weight over her head, Hayes was moved to the position of coil winder trainer. As a further accommodation, Hayes was restricted to working forty hours a week, even though consistent with the union contract, Howard Industries requires coil winder trainers to work overtime for as much as twenty hours a week.

¶3.     The AJ's determination of whether Hayes suffered a loss of earning capacity necessitated comparison of the coil winder position to the position of coil winder trainer. Howard Industries took the position that Hayes did not suffer a loss of wage-earning capacity because she returned to work after the second injury at a higher hourly rate than she had previously earned. Howard Industries hired Peter Mills as an expert to prepare a job analysis of the position of coil winder trainer. Mills's first report, filed in a pre-hearing statement, included a form titled "Job Analysis Re: Selina Hayes." The form had blank spaces that Mills had filled in. The form listed the "Exact Job Title: Coil Winder Trainer - Dept. 131," "Training Required to Perform Duties," "Essential Job Responsibilities," and the hours required. Mills had filled in "Work Hours (time) 7:00 am to 5:30 pm" "6 days per week" and "Overtime: hrs. per week Subject to overtime - approximately 20 hrs. per week." The form listed the physical requirements of the job. Mills had checked "no" on a box indicating the job could not be modified temporarily or permanently.

¶4.     However, Howard Industries attorney Richard Lewis Yoder submitted a supplemental

3

pre-hearing statement with a "corrected Job Analysis." Attached was a modified job analysis form from Mills, again entitled "Job Analysis Re: Selina Hayes." The form was the same in all respects except it altered the time requirements for the coil winder trainer job. It listed "Work Hours (time) 7:00 am to 3:30 pm," "5 days per week." The box for "Overtime: hrs. per week" was left blank. Therefore, the modified form showed five days, not six, and no overtime. It said the job could not be modified temporarily or permanently.

¶5.     At the initial hearing on Hayes's claims before the AJ, Hayes's attorney questioned Mills on the discrepancy between the two reports. As the Court of Appeals' opinion summarizes:

> ¶18.    Hayes called Howard Industries'[] expert Mills as her first witness. After being questioned about his company, the extent of work done for Howard Industries, and the income received from that work, Mills testified about Exhibit 14, the vocational report that Howard Industries provided on May 2, 2019. In the written portion of that report, Mills said that he was retained to perform "a job analysis of the position of coil winder trainer at Howard Industries, Department 131." He said that he visited the facility on February 26, 2019. During this two-hour visit, Mills spoke to Elton Buxton (supervisor), Walter Todd (supervisor and general foreman), and John Risher (health and safety manager). Mills also observed what coil winder trainers did. Mills said his job was to provide a job analysis of a coil winder trainer, which included an evaluation of the job's physical demands.

> ¶19.    Hayes'[s] attorney then presented Mills with his initial report with its initial attachment provided by Howard Industries on April 30, 2019, which was entered into evidence as Exhibit 17. Mills admitted that the attachment to this initial report indicated that trainers work six days a week with approximately twenty hours of overtime, although he said he did not confirm this with the employees he had spoken to at the facility. He testified that Hayes did what all other trainers did, except she was only allowed to work five days a week. Mills agreed that other trainers worked overtime as noted in the initial attachment to his written report and that he did not know, but would not

4

dispute, that coil winder trainers averaged between twenty-one and twenty-three hours a week. Contradicting the written portion of his report that stated he had been retained to evaluate the job of coil winder trainer, Mills then testified that the first attachment to his written report was a "mistake" and that he meant to evaluate the job given to Hayes as a specific accommodation for her alone, not what the general position of coil winder trainer entailed. Mills and Hayes's attorney continued discussing what Mills then characterized as "clerical errors" made in the first attachment to the report. Mills testified that the hours, days, and overtime worked in the that first attachment were "typographical error[s]" put in accidentally. Mills confirmed that he made no change to the written portion of his report to note that it was "revised" or "amended" in any way to indicate that it was now an evaluation of only the job given to Hayes to accommodate all her restrictions. Mills agreed that using the initial attachment to his report, Hayes could not perform the trainer's job from the standpoint of hours. Mills also said that he changed the report because Howard Industries's attorney Yoder called him and told him the information was incorrect. Mills said he no longer had his working notes in the file but that either his secretary or he inadvertently put the work hours and overtime information in the first report incorrectly.[4]

*Howard Indus. Inc.*, 2022 WL 6640398, at * 4. The AJ recessed the hearing to permit the parties to conduct discovery on the overtime requirements of the coil winder training job. Hayes subpoenaed wage records and expanded her number of witnesses to provide relevant testimony on the accurate earnings and overtime requirements for coil winder trainers.

¶6.     When the hearing reconvened some months later, Hayes's attorney solicited additional testimony from Mills in which he acknowledged that the job evaluations he prepares in other

---

[4] The Court of Appeals further noted in footnotes that "Mills admitted that the attachment to this initial report indicated that trainers Mills said that he and those in his company do pre-cert work and case management work for Howard Industries as well as other companies. However, Mills only testified for Howard Industries, never against it.[,]" and "Mills did not know the exact figure but testified that his company made over $100,000 per year from its contracted services for Howard Industries." *Id.* nn.4 & 5.

worker's compensation cases are evaluations of the actual job rather than the accommodated job (consistent with his initial report in this case), and that had the AJ accepted his second report on its face, the conclusion would be that Hayes had not suffered a loss of wage-earning capacity. Hayes's attorney moved to sanction Howard Industries and Yoder.

¶7.     The AJ found that Hayes indeed had sustained a loss of wage-earning capacity. The AJ further sanctioned Howard Industries $1,000 for willful delay and ordered Howard Industries to pay Hayes's attorney fees in the amount of $1,500 incurred because of the delay in the proceedings. The Commission amended the AJ's order to "reflect that Richard Lewis Yoder, Jr., shall pay both the sanction and the attorney's fee as the evidence before the Commission establishes that the report was changed at his specific direction and the report was offered into evidence before the Commission by Yoder." The Commission agreed that Hayes sustained a loss of wage-earning capacity but lowered the amount awarded for her permanent partial disability.[5] Howard Industries appealed and Hayes cross-appealed. The Mississippi Court of Appeals affirmed the Commission, and we granted *certiorari* to address the limited question of the imposition of the sanction against Yoder.

## DISCUSSION

¶8.     Appellate courts will affirm the Commission's findings of fact and order if supported by substantial evidence. ***Fought v. Stuart C. Irby Co.***, 523 So. 2d 314, 317 (Miss. 1988).

---

[5] The Court of Appeals affirmed the Commission's adjustment of the award. ***Howard Indus. Inc.***, 2022 WL 6640398, at **18-21.

Substantial evidence "means such relevant evidence as reasonable minds might accept as adequate to support a conclusion," evidence that "afford[s] a substantial basis of fact from which the fact in issue can be reasonably inferred." ***Delta CMI v. Speck***, 586 So. 2d 768, 773 (Miss. 1991) (quoting ***State Oil & Gas Bd. v. Miss. Min. & Royalty Owners Ass'n***, 258 So. 2d 767 (Miss. 1971)). An abuse of discretion standard is applied in reviewing a judge's imposition of sanctions. ***Ill. Cent. Gulf R.R. Co. v. McLain***, 174 So. 3d 1279, 1284 (Miss. 2015).

¶9.     Mississippi Code Section 71-3-59(2) (Rev. 2021) provides:

> If the full commission determines that proceedings in respect to a claim have been instituted, continued or delayed, including by way of appeal to the commission, without reasonable ground, the full commission shall require the party who has so instituted, continued or delayed such proceedings or the attorney advising such party, or both, to pay the reasonable expenses, including attorney's fees, caused by such institution, continuance or delay to the opposing party.

This and similar sanctions are "analogous to Mississippi Rule of Civil Procedure 11."

***Gamma Healthcare Inc. v. Est. of Grantham***, 334 So. 3d 85, 93-94 (Miss. 2022).

¶10.    In imposing a $1,000 sanction on the employer, the AJ found as follows:

> The collective testimony and the second report penned by Pete Mills are intended to convey a material misrepresentation of material fact designed to bring about a finding by this Administrative Judge that Claimant's position as coil winder trainer was not an accommodated job. The two reports apparent in this claim cause a major obfuscation of the facts and circumstances and would appear to question the validity of the report's content.
>
> Mr. Mills'[s] second report is not based on facts in evidence but on representations made to him by Employer's counsel, Lew Yoder.

7

When affirming the sanction but redirecting it to Yoder, the Commission explained:

> The misleading nature of the testimony of Mills and the report offered into evidence by the Employer have resulted in unnecessary delay in this matter. First, the hearing on the merits recessed for the Claimant and the Administrative Judge to determine the daily schedule and overtime requirements of the Claimant's position with the Employer. . . .While the report was not the only cause for delay between the two hearings (the second hearing was also delayed by Covid and other factors), the initial cause for recess was due to the misleading report submitted into evidence by the Employer.

> In addition, this matter has been unnecessarily delayed on appeal before the Commission. The Claimant's permanent disability is not a complex issue; however, due to the nature of the evidence submitted by the Employer and questions concerning the veracity of such evidence, the Commission has had to spend enormous and unusual time and effort to determine this matter that, without such misleading evidence, would be a typical determination by the Commission.

> We find on our review that the report was offered in a manner that was misleading and concerned a central issue to the claim. The report was devoid of any indication that the original report had been amended. Further, the report was written and presented in a manner that would appear in isolation or on review that the job analysis referred to all coil winder trainers and not specifically to just the Claimant. The report additionally was offered to support the Employer's position that the Claimant has no loss of wage-earning capacity as a result of her injuries, and the report failed to correctly identify the daily schedule and overtime requirements of Claimant's position.

> Therefore, based on our review of the proceedings and pursuant to the statutory authority in Miss. Code Ann. § 71-3-59, we affirm the Administrative Judge's imposition of sanctions and award of attorney's fees. However, we amend the Order to reflect that Richard Lewis Yoder, Jr., shall pay both the sanction and the attorney's fee as the evidence before the Commission establishes that the report was changed at his specific direction and the report was offered into evidence before the Commission by Yoder. Additionally, we find that this matter rises to a level of concern that further investigation into the veracity of the evidence offered may be required by the Mississippi Bar Association under Rule 3.3(4), Candor Toward the Tribunal.

8

¶11.    The "substantial evidence" standard recognizes that "the Commission is the judge of a witness's credibility." *Short v. Wilson Meat House, LLC*, 36 So. 3d 1247, 1251 (Miss. 2010). Our question on appellate review is whether the record evinces "such relevant evidence as reasonable minds might accept as adequate to support a conclusion." *Delta CMI*, 586 So. 2d at 773. Upon a thorough review of the record and transcript of the proceedings below, we find that the substantial evidence standard is satisfied; therefore, we must affirm.

¶12.    Further, sanctioning attorneys for misconduct facilitates the maintenance of "the integrity of our adversary process." *Pierce v. Heritage Props. Inc.*, 688 So. 2d 1385, 1391 (Miss. 1997). As both the AJ's and the Commission's frustration with the misleading report indicate, administrative and judicial processes cannot function without the members of our profession self-regulating in compliance with the highest standards of candor to the tribunal.

## CONCLUSION

¶13.    We affirm the decision of the Court of Appeals. The Court of Appeals did not err by affirming the Commission's order imposing sanctions as the sanctions were supported by substantial evidence.[6]

¶14.    **ON DIRECT APPEAL: AFFIRMED. ON CROSS-APPEAL: AFFIRMED.**

---

[6] Following this Court's grant of *certiorari*, both parties filed supplemental briefs. Before the Court is Selina Hayes's Motion to Strike Arguments Not Raised at Trial, in which she argues that Howard Industries improperly raised for the first time in its supplemental *certiorari* brief the argument that the Vocational Report and two Job Analyses prepared by expert Mills were hearsay. After due consideration, the Court finds that this motion should be, and is, granted.

**RANDOLPH, C.J., KING, P.J., ISHEE AND GRIFFIS, JJ., CONCUR. BEAM, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY COLEMAN, MAXWELL AND CHAMBERLIN, JJ.**

**BEAM, JUSTICE, DISSENTING:**

¶15.    Respectfully, I dissent.  The record does not support the sanction imposed by the Workers' Compensation Commission against counsel for Howard Industries.  And there is absolutely no evidence or inkling whatsoever that counsel may have committed some sort of felony as the Court of Appeals implied in its opinion.  *See* ***Howard Indus. Inc. v. Hayes***, No. 2021-WC-00694-COA, 2022 WL 6640398, at *12 n.14 (Miss. Ct. App. Oct. 11, 2022).

¶16.    As Presiding Justice Wilson rightly concluded, counsel for Howard Industries did not make "any misleading statement or offer any misleading evidence" in this case.  ***Id.*** at *22 (Wilson, P.J., concurring in part and dissenting in part).  The corrected job analysis report "was exactly what it purported to be—an analysis of [*Selina*] *Hayes's* job requirements." ***Id.*** at *23.  Thus, "the Commission clearly erred and abused its discretion by finding that [counsel] offered misleading evidence and by sanctioning [counsel] for offering a truthful, accurate expert report and testimony." ***Id.***

¶17.    At the outset, the record shows that a "rebuttable presumption of no loss of wage-earning capacity" had arisen at the start of this case by the stipulated fact that Hayes was earning more in wages after her 2015 injury than before the injury.  ***Gregg v. Natchez Trace Elec. Power Ass'n***, 64 So. 3d 473, 476 (Miss. 2011) (citing ***Gen. Elec. Co. v. McKinnon***, 507 So. 2d 363, 365 (Miss. 1987)).  Hayes therefore had the burden of rebutting this

10

presumption. *Id.* And she should have been prepared to do so at the June 4 hearing.

¶18. I fail to see what evidence Hayes presented to rebut this presumption when this matter finally resumed in September 2020 that could not have been presented at the June 4 hearing. Thus, I agree with Howard Industries that any delay in the proceedings should be attributed to Hayes's counsel.

¶19. Further, I know of no workers' compensation case in Mississippi in which a vocational expert's report re-marking overtime, by itself, was held to constitute conclusive or even adequate evidence of overtime for the ultimate issue of whether that employee has suffered a loss of wage-earning capacity. *Cf. Gregg*, 64 So. 3d 477-78 (undisputed testimony from employee's supervisor that employee was no longer eligible to earn "steady on-call compensation" due to his work-related injury rebutted the presumption of no loss of wage-earning capacity).

¶20. Howard Industries engaged Peter Mills to prepare a vocational report for Hayes's position as a coil winder trainer. Although Mills testified at the June 4 hearing that he was aware coil winder trainers work overtime, there is no showing that Mills had any direct knowledge of Howard Industries' overtime policies or the authority to speak to them factually or adequately.

¶21. But even if the record were to show otherwise, I still find nothing improper, much less misleading, with the submission of the corrected job analysis. First, the corrected job analysis report is neither untruthful nor inaccurate. Hayes cannot work more than forty hours

11

per week based on her medical restrictions. The corrected report accurately reflects this circumstance.

¶22.   Second, even if the first job analysis report accurately reflects that coil winder trainers work overtime, the report by itself is inadequate for assessing whether Hayes had suffered a loss of wage-earning capacity due to her inability to work overtime based on her medical restrictions. The report is indeterminate with regard to the actual amount of overtime worked by coil winder trainers, and it indicates uncertainty by saying that overtime occurs "weekly as needed."

¶23.   Suffice it to say, additional evidence was necessary in this case in order for Hayes to rebut the presumption of no loss of wage-earning capacity—irrespective of Mills's first report. Such evidence, according to the AJ's order, entered the case through both Hayes's and Elton Buxton's testimonies regarding overtime.[7]

¶24.   Had Hayes proceeded with these witnesses before or instead of Mills, I am certain that the AJ would have realized that was it unnecessary to recess the June 4 hearing. The same result (rightly or wrongly) would have been reached by the AJ and the Commission regarding

---

[7] Buxton is Hayes's supervisor. He testified that coil winder trainers are required to work overtime if requested. He said that the number of overtime hours fluctuates and varies. Buxton further stated that at the time of the hearing, he had one coil winder trainer under him who was working overtime for that week. And for this particular week, they were working eleven hours a day, Monday through Friday, and eight hours on Saturday. Buxton said that there are other shifts, but he "didn't know how they do it."

benefits,[8] without the maelstrom of confusion that ensued in this case from the start.

¶25.    Instead, Hayes's case-in-chief began and ended in recess with counsel for Hayes eliciting yes or no responses from Mills regarding the job analysis report and doing so with leading questions premised on counsel's own assumptions about the corrected job analysis report.  And each time Mills tried to explain why he amended the job analysis report, counsel for Hayes would cut him off.  But as the record shows, Mills managed to get the following response in at the June 4 hearing:

> Your Honor, I don't get involved in the specific number of hours on ongoing basis that Howard has or does not have.  And in regard to this case, I knew that [Hayes] could not work over 40 hours per week.  The others do, but they are - - and that's why it said in that first report subject to overtime.  And at the time, that was 20 hours a week, I believe.  But it could change.  It could be less or it could be more, according to the information that I have or that I am aware of.  But as far as [counsel for Hayes's] question to me, am I aware of this, I don't know that or keep up with that type of information nor am I provided that type of information about overtime at Howard except for a specific job analysis that I do.

¶26.    This testimony from Mills buttresses the record facts of this case and should have resolved any confusion or misunderstanding concerning Mills's corrected job analysis report.  This testimony, however, was disregarded by the AJ and the Commission, which instead viewed the corrected job analysis report in isolation and concluded that it conveyed a material misrepresentation.  As explained above, the record does not support this conclusion.

¶27.    Further, at the June 4 hearing, counsel for Hayes appeared to suggest a number of

---

[8] I do not speak to the merits of the Commission's decision with regard to the benefits award; my concern in this case lies only with the Commission's decision to sanction.

times while questioning Mills that overtime is guaranteed to coil winder trainers based on their union contract. This is incorrect at best and potentially misleading at worst. As Buxton later explained while testifying on behalf of Hayes, overtime is not guaranteed to coil winder trainers. Trainers are simply required to work overtime when needed, and it fluctuates and varies amongst them. Again, what is not incorrect or misleading is that Hayes is medically restricted from working overtime, which is all that the corrected job report conveyed.

¶28. The actuality that Hayes is medically restricted from working overtime that is neither guaranteed or certain for other trainers, at a minimum, raised an intricate and complicated issue for purposes of Mississippi workers' compensation jurisprudence.[9] The facts and circumstances of this case generated this complexity, not Howard Industries' counsel. And he was wrongly sanctioned for it.

¶29. I reiterate that by statute, controverted workers' compensation cases are adversarial in nature. Miss. Code Ann. § 71-3-47 (Rev. 2021); *see also **Dialysis Sols., LLC v. Miss. State Dep't of Health***, 96 So. 3d 713, 717 (Miss. 2012). As with any legal dispute, counsel for either side is expected to protect his or her client's interests.

¶30. And although "the rules of practice, procedure and evidence, formally observed in courts of law, are relaxed in proceedings before administrative agencies[,]" this does not mean that agencies are free to proceed as they please. ***McGowan v. Miss. State Oil & Gas Bd.***, 604 So. 2d 312, 317-18 (Miss. 1992). "[C]ommon sense suggests a regimen of

---

[9] Such issue was not considered or recognized by the AJ or the Commission.

administrative adjudicatory fairness[,]" which I hope will be kept in mind going forward.

*Id.* at 318.

¶31.   **COLEMAN, MAXWELL AND CHAMBERLIN, JJ., JOIN THIS OPINION.**